UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MAMIE JOHNSON,

                Plaintiff,

     -against-

WAL-MART STORES EAST, LP,

                Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-1423 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

     Plaintiff Mamie Johnson brings this personal injury action based on injuries she allegedly sustained when she slipped and fell in a store owned and operated by Defendant Wal-Mart Stores East, LP. (Ex. A to Not. of Removal ("Compl.") (Dkt. 1 at ECF pp.5-8) ¶ 3.) Plaintiff contends that Defendant negligently failed to remove the hazard that allegedly caused her fall, and thus is liable to her in tort.

     Before the court are Defendant's motion for summary judgment and Plaintiff's cross-motion for sanctions for Defendant's alleged spoliation of evidence. (Mot. for Summ. J. ("Summ J. Mot.") (Dkt. 26); Mot. for Sanctions ("Sanctions Mot.") (Dkt. 30).) For the following reasons, the court GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment and DENIES Plaintiff's cross-motion for sanctions.

## I. BACKGROUND

### A. Factual History

     The facts in this opinion are drawn, where possible, from the parties' statements of undisputed facts, submitted pursuant to Local Rule 56.1. (Def. R. 56.1 Statement ("Def. 56.1") (Dkt. 28); Pl. R. 56.1 Counterstatement ("Pl. 56.1") (Dkt. 33); Pl. R. 56.1 Reply ("Pl. 56.1") (Dkt. 32); Def. R. 56.1 Reply ("Def. 56.1 Reply") (Dkt. 38); Def. Response to Pl. 56.1

1

(Dkt. 39).) See also Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (The court "is not required to consider what the parties fail to point out in their Local Rule 56.1 statements." (internal quotation marks and citations omitted)). This opinion relies only on facts that are truly undisputed in the parties' Rule 56.1 statements, noting any areas of apparent disagreement and citing to the record for additional facts.

1. <u>Testimony Regarding Plaintiff's Fall</u>

The events in question occurred on July 6, 2013, in Defendant's store in Spring Hill, Florida. (Def. 56.1 ¶¶ 7-8; 11.) Plaintiff and her son, Lavel Johnson ("Lavel"), entered the store in order to purchase a "tote bag." (Id. ¶ 10.) Plaintiff was directed by a store employee to the back of the store. (Id. ¶¶ 12-13.) As she was walking there, Plaintiff states that she slipped in a puddle of liquid on the floor. (Id. ¶¶ 17, 19 (quoting Ex. E to Summ. J. Mot. ("Pl. Dep. Tr.") (Dkt. 27-5) 44:18-55:10).)

Plaintiff testified that she did not see the liquid before she slipped and did not know how long it had been on the floor, but that it was "a lot" of liquid. (Pl. Dep. Tr. 49:12-18, 50:2-4, 51:25-52:3.) She further testified that she did not see any containers that could have been the source of the spill on the floor, nor did she see safety cones or other indicators that the floor was wet. (Id. 53:13-24.) Similarly, in a written account made on the day of the fall and an interview conducted two days later with one of Defendant's employees, Plaintiff did not mention that she was aware of the source of the liquid or of any evidence that store employees knew about the liquid or had attempted to clean it up. (Ex. F. to Summ. J. Mot. ("Customer Statement") (Dkt. 27-6); Ex. D. to Summ. J. Mot. ("Pl. Interview Tr.") (Dkt. 27-4).)

2

Plaintiff testified that, following her fall, a female employee of the store "came running up to [her] and asked if she was alright."[1] (Pl. Dep. Tr. 57:21-23.) Plaintiff responded that she was unable to get up and had injured her knee, at which point that employee hailed other employees to assist. (Id. 59:6-21.) Plaintiff testified that a second employee[2] came to the scene and attempted "to wipe [] up [the liquid] with some napkins or something." (Id. 59:24-60:25.) During this process and while she was still on the floor, Plaintiff stated that she called Lavel with her cellular phone, at which point he came to her assistance. (Id. 59:17-21, 61:11-15.) After several minutes, store employees brought a wheelchair for Plaintiff, and she was removed from the store and brought to the hospital in an ambulance. (Id. 73:11-24.)

Plaintiff's son, Lavel, provides a somewhat different account. In his deposition, Lavel testified that he was approximately one aisle away from Plaintiff at the time of the accident, and that he was prompted to come to the scene when he heard Plaintiff "yelling [his] name." (Ex. G to Summ. J. Mot. ("Lavel Dep. Tr.") (Dkt. 27-7) 16:3-8, 17:3-11.) Lavel estimated that he arrived "ten seconds" after Plaintiff fell (id. 17:16-7), and that no one else was present when he reached Plaintiff's location (id. 20:12-16; see also id. 31:3-8).

Lavel testified that the liquid on the floor appeared to be urine, and that one of Defendant's employees told him that one of the store's customers had urinated on the floor on

---

[1] In "corrections" submitted subsequent to Plaintiff's deposition, Plaintiff attempted to change this statement to reflect that "[t]he first Wal-Mart employee that came to the scene had apologized to me for my fall and then added that she had just gone to fetch a bucket and cleaning materials to clean the wet floor." (Def. 56.1 ¶ 3 n.2.) At a hearing before Magistrate Judge Lois Bloom on January 5, 2017, Judge Bloom struck this and other "corrections" to Plaintiff's deposition testimony. (Jan. 6, 2017, Scheduling Order.)

[2] Plaintiff's testimony on this point is somewhat ambiguous, as it could be read to suggest that either the first or second employee who arrived at the scene of Plaintiff's fall attempted to clean up the puddle. (Pl. Dep. Tr. 59:22-25 ("Q. You said that she went to get another employee? A. She came over to try to wipe it up with some napkins or something."); 60:4-8 ("Q. . . . [Y]ou said that she went to get another employee. A. I don't know if she called or went to get [her]."); 60:20-25 ("Q. . . . . So, did another Walmart employee then arrive at the scene? A. Yes. Q. How many? A. I know it was one other lady came [sic]. That's all.").) Exactly who tried to clean up the puddle at this point is, however, ultimately immaterial to the dispute.

3

other occasions. (Id. 21:11-22:18; see also id. 22:14-17 ("[Defendant's employee] didn't say they actually witnessed [the customer urinating], he was saying it like, oops it's Saturday, another day of that happening again.").) Lavel testified that, when he arrived at the scene of Plaintiff's accident, he observed paper towels "soaked" in the liquid. (Id. 32:14-18; see also Ex. H to Summ. J. Mot. ("Witness Statement") (Dkt. 27-8).) Lavel stated that the paper towels looked as if "someone was trying to clean [the puddle] up and [] didn't finish" (Lavel Dep. Tr. 20:8-11), though he was unable to say whether the paper towels were placed on the floor before or after Plaintiff fell (id. 39:20-41:15). Lavel also testified that he saw a Walmart employee in the area with a mop to clean up the spill, and that the employee explained that they were "already in the midst of cleaning up that space" at the time of Plaintiff's fall. (Id. 31:16-32:13.)

    2.    <u>Video Evidence</u>[3]

In addition to the deposition testimony regarding the incident, Defendant also produced a video purporting to depict Plaintiff's fall. (Ex. N to Summ. J. Mot. ("Store Video") (Dkt. 43). The court has reviewed the video, which shows the following events:

- At approximately 11:37:25, an individual in a yellow dress falls while walking between the aisles of the store. (Id. 11:37:25.) The cause of the fall is not visible.

- Within approximately ten seconds of the fall, multiple other individuals approach the individual on the floor. (Id. 11:37:35.) One of those individuals, who appears to be an employee of the

---

[3] Plaintiff objects to the introduction of the video on the grounds that it has not been "authenticated." (See Pl. Mem. in Supp. of Sanctions Mot. and Opp'n to Summ. J. Mot. ("Pl. Mem.") (Dkt. 34) at 17-18.) Plaintiff's objection is without merit: Defendant has provided affidavits from a declarant who is familiar with the video surveillance systems in place at the store in question and who states that the video produced "accurately reflects the video that the store preserved of the incident in question." (Ex. 7 to Sanctions Mot. ("1st Dorrity Aff.") (Dkt. 31-7); see also Ex. Q to Def. Reply ("2d Dorrity Aff.") (Dkt. 35-3) (averring, inter alia, that the affiant "is familiar with and operates the store's surveillance system").) These statements regarding the process by which the video was recorded and delivered are sufficient to show that "the video is authentic and the events are accurately depicted." Boykin v. Western Express, Inc., No. 12-CV-7428 (NSR) (JCM), 2016 WL 8710481, at *5 (S.D.N.Y. Feb. 5, 2016) (noting that video evidence can be authenticated by, inter alia, "testimony as to the chain of custody").

4

- store,[4] walks away quickly (id. 11:37:58), while at least other one employee remains with the individual on the floor (id. 11:37:58-11:38:30).

- Just over a minute after Plaintiff's initial fall, another store employee approaches the individual on the floor holding what appears to be a roll of paper towels. (Id. 11:38:30.) The employee then appears to pull several paper towels off the roll and place them on the ground near the fallen person. (Id. 11:38:35-38.)

- Roughly three minutes after the fall, an individual arrives pushing a cart containing what appear to be mops and other cleaning supplies. (Id. 11:40:27.)

- At 11:41:03, three and a half minutes after the initial fall, an individual wearing a white sleeveless shirt arrives and appears to converse with the fallen person. (Id. 11:41:03.) That person then remains at the site of the accident and eventually removes the fall victim from the area in a wheelchair. (Id. 11:55:48.)

During Lavel's deposition, counsel for Defendant asked Lavel whether could identify himself as the individual seen in the video wearing a white sleeveless shirt. (Lavel Dep. Tr. 29:5-9.) Lavel responded "[t]hat can be me, but I'm not sure." (Id. 29:10-11.)

3.   Testimony Regarding Store Procedures

In addition to testifying about the incident itself, several of Defendant's employees discussed the procedures for preventing and addressing hazardous conditions within the store. Veronica Matos, a "salaried member of management" at the store in question, testified that store employees "walk the facility nonstop . . . to verify there is nothing dangerous." (Ex. I to Summ. J. Mot. ("Matos Dep. Tr.") (Dkt. 27-9) 9:5-7.) Matos testified that any employee who discovers a liquid spill on the floor must stay with the spill and find another employee to clean the area. (Id. 17:9-18:13.) Both Matos and other employees of the store testified that any liquids founds on the floor are generally cleaned with paper towels. (Id. 27:14-22.)

---

[4] In its motion, Defendant identifies the individuals as employees. (See, e.g., Def. 56.1 ¶ 67.) The court agrees with this characterization, as those individuals appear to be wearing store uniforms.

Defendant's employees also testified regarding the procedures for addressing slip-and-fall incidents. According to those employees, store employees are directed to first assist the fallen customer and ask whether he or she needs medical assistance. (Id. 22:16-23:10; Ex. L to Summ J. Mot. ("Kokoris Dep. Tr.") (Dkt. 27-12) 8:23-9:7.) Next, employees are directed to clean up the cause of the accident. (Ex. J to Summ. J. Mot. ("Kramlich Dep. Tr.") (Dkt. 27-10) 59:5-15.) Before cleaning the spill, however, Defendant's policy directives call for employees to document the scene, including photographing the area "[p]rior to altering the scene." (Ex. 8 to Sanctions Mot. ("Policy Document") (Dkt. 31-8) at ECF p.90; see also Kramlich Dep. Tr. 59:11-22; Kokoris Dep. Tr. 9:8-10:3.)

### B. Procedural History

Plaintiff filed this action in the Supreme Court of the State of New York for Kings County on March 18, 2016, and Defendant removed the case to this court on March 23, 2016. (Not. of Removal. (Dkt. 1).) Plaintiff brings a single cause of action for negligence and seeks $1 million in damages for injuries sustained in her fall. (Id.)

On July 28, 2017, Defendant filed its fully briefed motion for summary judgment. (Summ J. Mot.) On the same day, Plaintiff filed its cross-motion for sanctions against Defendant for its conduct related to video evidence of the incident. (Sanctions Mot.)

## II. DISCUSSION

Currently before the court are Defendant's motion for summary judgment and Plaintiff's cross-motion for sanctions. The court addresses those motions separately, turning first to Plaintiff's sanctions motion and then addressing Defendant's motion for summary judgment.

### A. Plaintiff's Motion for Spoliation Sanctions

Plaintiff asks the court to impose sanctions against Defendant based on Defendant's purported failure to produce video evidence of the accident as requested in discovery and

6

requests that the court impose unspecified sanctions. (Pl. Mem. in Supp. of Sanctions Mot. and Opp'n to Summ. J. Mot. ("Pl. Mem.") (Dkt. 34).) After review, the court finds the motion to be baseless and denies it accordingly.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). Where a party spoliates evidence in violation of a court order, including through non-production of evidence, the court may sanction that party pursuant to Federal Rule of Civil Procedure 37(b). Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 435 (S.D.N.Y. 2010) (citing Residential Funding Corp. v. DeGeorge Fin. Grp., 306 F.3d 99, 106-07 (2d Cir. 2002)).

Plaintiff presents two overlapping bases for her motion. First, she contends that Defendant failed to produce "a copy of the in-store video surveillance between . . . 10.00 A.M. [and] 12.00 P.M. [on the date of the incident]," as requested in discovery (Ex. 2 to Sanctions Mot. (Dkt. 31-2) ¶ 15), instead producing footage from approximately one hour before and one hour after Plaintiff's fall—that is, from 10:36 AM to 12:36 AM.[5] (Pl. Mem. at 3.) Second, Plaintiff claims that the two hours of surveillance that Defendant produced are insufficient because that tape was accompanied by an affidavit that identified the footage as depicting "the incident which occurred on July 7, 2013, involving the Plaintiff, Mamie Johnson." (Ex. 7 to Sanctions Mot. ("1st Dorrity Aff.") (Dkt. 31-7) ¶ 4 (emphasis added).) Plaintiff suggests that the

---

[5] In her memorandum in support of the Sanctions Motion, Plaintiff claims that the video produced only depicted the period between 10:36 AM to 11:41 AM. (Pl. Mem. at 2-3.) In its opposition to the Sanctions Motion, however, Defendant responds that the video it produced "begins at 10:36:54 a.m. and ends at 12:36:58" (Def. Reply in Supp. of Summ. J. Mot and Opp'n to Sanctions Mot. ("Def. Reply") (Dkt. 40) at 3), which is consistent with the video provided to the court as Exhibit N to Defendant's motion for summary judgment (Store Video). Plaintiff does not explain her claim to have received a truncated copy of the video, nor does she raise the claim again in her reply. (See generally Pl. Reply in Supp. of Sanctions Mot. (Dkt. 37) at 1-2.) Having reviewed the video, the court sees no basis for this contention.

7

affiant's statement that he reviewed video only from the day after Plaintiff's accident on July 6, 2013, indicates that the video produced is irrelevant to the claims at issue and non-responsive to her requests. (Pl. Mem. at 3.)

Neither argument merits a finding of spoliation or imposition of sanctions. The court finds Plaintiff's argument that the video is non-responsive or confusing because of the incorrect date in the affidavit to be entirely unconvincing. This error is highly unlikely to have prejudiced Plaintiff: the affidavit indicates that the video surveillance depicts Plaintiff's injury (1st Dorrity Aff. ¶ 4), and the time and date listed on the video and events shown therein correspond with other accounts of Plaintiff's fall.[6] Plaintiff can hardly claim, then, to have been uncertain as to what video Defendant produced.

Plaintiff's claim that Defendant failed to produce video that was responsive to her discovery demand fares no better. In cases involving video surveillance of the scene of an accident, a party's obligation to preserve extends to "footage 'of the accident'—put otherwise, the video that 'recorded [plaintiff's] fall.'" Gleeson v. Marriot Hotel Servs., Inc., No. 11-CV-6295 (CM), 2013 WL 4573905, at *2 (S.D.N.Y. Aug. 26, 2013) (quoting Matteo v. Kohl's Dep't Stores, Inc., No. 09-CV-7830 (RJS), 2012 WL 760317, at *4 (S.D.N.Y. 2012)); see also Lacey v. Target Corp., No. 13-CV-4098 (RML), 2015 WL 2254968, at *6 (E.D.N.Y. May 13, 2015). In preserving the tape that showed the site of the incident before and after Plaintiff's fall, Defendant discharged its duty to safeguard the relevant evidence. Inasmuch as Plaintiff suggests that Defendant should have produced video going back further in time, or

---

[6] Defendant also provided a corrected affidavit in response to Plaintiff's motion, which states that the video tape produced dates from July 6, 2013, and attributes the prior error to the affiant's review of that video on July 7, 2013. (Ex. Q to Def. Reply ("2d Dorrity Aff.") (Dkt. 35-3) ¶ 4.)

8

showing other parts of the store,[7] she fails to provide any reason to believe that additional footage would do anything to demonstrate the source of the spill, store employees' awareness of the source of the spill, or any other fact relevant to the claims at issue. Because Plaintiff cannot show that Defendant violated an obligation to preserve footage relevant to her claim, the court sees no basis to conclude that Defendant should be subject to any spoliation sanction.

Accordingly, Plaintiff's motion for spoliation sanctions is denied.

### B. Motion for Summary Judgment

Defendant moves for summary judgment as to Plaintiff's sole claim for negligence. In particular, Defendant contends that Plaintiff has produced no evidence from which a reasonable jury could find that Defendant or its employees knew or should have known of the liquid on the store floor in which she slipped. In response, Plaintiff contends that she has provided evidence that supports an inference both that Defendant's employees had actual knowledge of the hazard and had attempted to address it and, separately, that the facts support a finding that Defendant was on constructive notice of the spill by virtue of the regularity with which such hazards arise and the length of time it was present on the date in question. For the reasons that follow, the court concludes that Defendant is entitled to summary judgment on the issue of constructive notice but not as to Plaintiff's theory of actual notice.

#### 1. Legal Standard

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit

---

[7] Plaintiff does not claim that Defendant had access to other cameras that depicted the site of Plaintiff's fall and failed to produce footage from such cameras.

a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the non-moving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[8] Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. Apr. 28, 2015) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Liberty Lobby, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW West LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (S.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory

---

[8] In New York courts, a defendant seeking dismissal of a "slip-and-fall" claim on summary judgment bears the "initial burden of making a prima facie showing that it neither created the hazardous condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it." Rodriguez v. White Plains Pub. Sch., 826 N.Y.S.2d 425, 426 (N.Y. App. Div. 2006). In federal court, however, the evidentiary burden of surviving summary judgment is determined by Federal Rule of Civil Procedure 56, not state law. Shimunov v. Home Depot U.S.A, Inc., No. 11-CV-5136 (KAM), 2014 WL 1311561, at *3 (E.D.N.Y. Mar. 28, 2014); Painchault v. Target Corp., No. 09-CV-1831 (NGG) (RML), 2011 WL 4344150, at *3 (E.D.N.Y. Sept. 14, 2011).

allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

2. Applicable Law

As a threshold issue in this case, the court must determine whether Florida or New York law should be applied to the claim. "A federal court sitting in diversity . . . must apply the choice of law rules of the forum state." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 157 (2d Cir. 2012) (internal quotation marks and citation omitted). Under New York choice of law rules, the court must first determine whether "there is an actual conflict between the laws of the jurisdictions involved." Wall v. CSX Trans., Inc., 471 F.3d 410, 415 (2d Cir. 2006) (quoting In re Allstate Ins. Co. (Stolarz), 613 N.E.2d 936, 937 (N.Y. 1993)). "Laws are in conflict '[w]here the applicable law from each jurisdiction provides different substantive outcomes.'" Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) (quoting Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998)). "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." Licci, 672 F.3d at 157.

The requirements of showing negligence in a slip-and-fall case in Florida mirror those imposed by New York law.[9] In Florida, premises liability for claims involving "transitory foreign substances" are governed by statute, which states that:

---

[9] The general requirements for asserting negligence claims are also substantially identical under Florida and New York law, requiring plaintiffs to show "(1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damages as a proximate cause of that breach." Casiano v. Target Stores, No. 06-CV-6286 (NG), 2009 WL 3246836, at *3 (E.D.N.Y. Sept. 24, 2009) (New York law); see also Randall v. Target Corp., No. 13-61196-CV, 2014 WL 222340, at *2 (S.D. Fla. Jan 21, 2014) (citing Zivojinovich v. Barner, 525 F.3d 1059, 1067 (11th Cir. 2008) (per curiam)) (Florida law). The parties have not disputed the duty owed by Defendant or any issues of causation, but only the element of breach as it relates to slip-and-fall accidents.

11

> If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had <u>actual or constructive knowledge</u> of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> (a) The dangerous condition existed for <u>such a length of time</u> that, in the exercise of ordinary care, the business establishment <u>should have known</u> of the condition; or
>
> (b) The condition <u>occurred with regularity</u> and was therefore foreseeable.

Fl. Stat. § 768.0755 (emphasis added). These elements of Florida law mirror New York common law, which requires slip-and-fall plaintiffs to show that the "defendant created the offending condition [that caused plaintiff's fall] or that defendant had actual or constructive notice of the condition." Gonzalez v. K-Mart Corp., 585 F. Supp. 2d 501, 503 (S.D.N.Y. 2008). The defendant may have "constructive notice" when the "defect . . . [is] visible and apparent and . . . exist[s] for a sufficient length of time prior to the accident to permit [the defendant's] employees to discovery and remedy it," Lemonda v. Sutton, 702 N.Y.S.2d 275, 276 (N.Y. App. Div. 2000), or when the defendant "had actual notice of a recurring problem in the location the accident occurred," Tuthill v. United States, 270 F. Supp. 2d 395, 400 (S.D.N.Y. 2003).

Comparing these two standards, the court sees no material difference in the law of the two jurisdictions that would alter the substantive outcome of the present dispute, nor do the parties point to any difference between the laws of those states that would change the outcome of the present dispute. Accordingly, the court analyzes Plaintiff's claim under New York law.

3. <u>Elements of the Slip-and-Fall Claim</u>

Defendant contends that Plaintiff has failed to produce evidence supporting a finding that Defendant had either actual or constructive notice of the hazard that caused Defendant's fall. (Def. Mem. at 4-13.) After examining these claims in turn, the court agrees that Plaintiff has not

12

put forth sufficient evidence that Defendant had constructive notice of the hazard, but finds that evidence in the record presents a genuine issue as to Defendant's actual notice.

        *a.*     *Actual Notice*

Plaintiff first argues that Defendant had "actual knowledge" of the hazard because, she claims, Defendant's employees had engaged in an incomplete effort to clean up the liquid prior to her fall. In support of this argument, Plaintiff points to photographs of the site of her fall, which depict paper towels in the liquid, and to Defendant's policies stating that accident scenes should be photographed in an unaltered condition. (Pl. Mem. at 8.) Taken together, Plaintiff contends that this evidence supports an inference that, at the time of her fall, Defendant's employees were aware of the condition and made some effort to clean the spill but left the hazard in place.[10]

"To prove actual notice, plaintiff must present proof that defendants were, in fact, aware of the dangerous condition." Nussbaum v. Metro-North Commuter R.R., 994 F. Supp. 2d 483, 495 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). "Defendants have actual knowledge of a defect if they created the condition or received reports of it such that they have actual knowledge of the defect's existence." Quarles v. Columbia Sussex Corp., 997 F. Supp. 327, 332 (E.D.N.Y. 1998) (citing Torri v. Big V of Kingston, Inc., 537 N.Y.S. 629, 631 (N.Y. App. Div. 1989)). Even where a defendant has actual notice of the condition, however, they

---

[10] Defendant also contends that there is no evidence that Defendant or any of its employees created the hazardous condition (Def. Mem. at 5-6), and Plaintiff does not contest this point. The court agrees that there is nothing in the record to suggest that Defendant was responsible for creating the hazard, and so concludes that Defendant is entitled to summary judgment on that point. See Cousin v. White Castle Sys., Inc., No. 06-CV-6335 (JMA), 2009 WL 1955555, at *7 (E.D.N.Y. July 6, 2009) (stating that, where there is no testimony that a defendant's employees were handling liquid in the area of a spill or were engaged in an activity in that area that might have led to such a spill, "New York courts routinely grant summary judgment in favor of defendants" (collecting cases)).

13

must be afforded a "reasonable time to correct or warn about its existence." Mercer v. City of New York, 670 N.E.2d 443 (Mem.).

In the court's view, Plaintiff has narrowly presented sufficient evidence to make out a genuine issue regarding Defendant's actual notice of the hazard. As Plaintiff notes, Defendant's own store policies require employees to take a picture of the scene of a potential injury claim "[p]rior to altering the scene." (Policy Document at ECF p.90.) Moreover, Defendant's employees testified that store staff use paper towels to address spills like those that caused Plaintiff's injury. (See, e.g., Matos Dep. 27:14-22; Kokoris Dep. Tr. 10:4-11.) Taken together with the photographs showing paper towels in the liquid in which Plaintiff slipped, a rational jury could infer that (1) the photographs depict the area as it appeared at the time Plaintiff slipped;[11] and (2) the paper towels depicted therein were placed at the scene by Defendant's employees before Plaintiff's fall, indicating those employees were actually aware of the spill.[12]

This does not end the inquiry, however. Plaintiff must also provide evidence that would allow a reasonable jury to find that Defendant failed to act despite having "reasonable time within which to correct or warn about [the hazard's] existence." Lewis v. Metropolitan Transp. Auth., 472 N.Y.S.2d 368, 371 (N.Y. App. Div. 1984). "[N]otice alone is not enough; the

---

[11] The court notes that the video produced by Defendant appears to show an employee of the store placing paper towels on the spill very shortly after Plaintiff's fall and, quite possibly, before the photographs in question were taken. (Store Video 11:38:35-38.) The video itself is unclear, however, as to whether any photographs were taken (and, if so, when) or whether there were also paper towels on the floor prior to Plaintiff's fall. Accordingly, the court cannot conclude that Plaintiff's account is "blatantly contradicted by the record, so that no reasonably jury could believe it," Scott v. Harris, 550 U.S. 372, 380 (2007), and declines to rule for Defendant on that basis.

[12] Plaintiff also seeks to show that Defendant had actual notice using Lavel's testimony that (1) he arrived only seconds after Plaintiff's fall; (2) there were paper towels on the floor when he arrived; and (3) the first employee to arrive in the area after him "arrived at the incident scene with a mop [and] informed him that she had just gone to fetch the mop to clean the dangerous condition prior to plaintiff's fall." (Pl. Mem. at 7.) Defendant objects to this testimony on the grounds that it is contradicted by the video evidence, which appears to show Lavel arriving several minutes after Plaintiff's fall and after multiple employees had already arrived on scene and begun cleaning the spill. (Def. Reply at 7-8.) Because the court finds that other evidence presented by Plaintiff is sufficient to raise an inference of actual notice, it does not address this potential discrepancy.

plaintiff must also show that defendant had 'a sufficient opportunity, within the exercise of reasonable care, to remedy the situation' after receiving such notice." Aquino v. Kuczinski, Vila, & Assocs., P.C., 835 N.Y.S.2d 16, 19 (N.Y. App. Div. 2007). Accordingly, courts routinely grant summary judgment even where the defendant is shown to have actual knowledge of the hazard if the plaintiff cannot also make the required showing that, after receiving such notice, defendant neglected to act within a reasonable time to remedy the condition.[13] See, e.g., Gonzalez, 585 F. Supp. 2d at 505; Stasiak v. Sears, Roebuck & Co., 722 N.Y.S.2d 251, 252 (N.Y. App. Div. 2001) (reversing denial of summary judgment where plaintiff was injured in the period between defendant's employees noticing spill and returning to address it); Scherer v. Golub Corp., 956 N.Y.S.2d 275, 276 (N.Y. App. Div. 2012) (affirming summary judgment for defendant where defendant was in the process of addressing hazardous condition when plaintiff fell); cf. Hale v. Wilmorite, Inc., 827 N.Y.S.2d 387, 388 (N.Y. App. Div. 2006) (affirming directed verdict for defendant where record contained no "evidence of actual notice . . . and the lapse of a reasonable time for [defendants] to correct the condition or warn of its existence").

The court again concludes that the record narrowly establishes the existence of a genuine issue of material fact as to whether Defendant had a reasonable time to respond to the spill. On the one hand, Plaintiff points to no evidence in the record as to when Defendant discovered the spill or began to take remedial efforts. Ordinarily, this lack of evidence would be fatal, as neither the court nor a reasonable juror could assess whether Defendant's employees acted within a reasonable time to address the hazards. Ironically, however, Plaintiff is saved by the video produced by Defendant (and contested by Plaintiff). If, as the court has already concluded, there

---

[13] Florida courts apply the same rule in cases of actual notice. See, e.g., Gaidymowicz v. Winn-Dixie Stores, Inc., 371 So.2d 212, 214 (Fla. Dist. Ct. App. 1979) ("We conclude that with only one minute of actual notice, [defendant] did not have a sufficient opportunity to correct the dangerous condition and, therefore, could not be liable on the basis of actual notice.").

15

is a reasonable inference that the paper towels depicted in the liquid were placed there by a store employee prior to Plaintiff's fall, then the fact that this partial clean-up is not depicted on the video gives rise to the reasonable inference it took place outside of the period depicted in the video—i.e. more than an hour prior to the slip-and-fall. The passage of more than an hour between Defendant's actual notice of the hazard and Plaintiff's fall, in turn, would provide Defendant with more than a "sufficient opportunity, within the exercise of reasonable care, to remedy the situation." Aquino, 835 N.Y.S.2d at 19.

Accordingly, Defendant's motion for summary judgment is denied as to Plaintiff's theory that Defendant had actual notice of the hazardous condition that caused her injury.

### b. *Constructive Notice*

Plaintiff also presents the alternative theory that Defendant had constructive notice of the hazardous condition that caused her injury. Plaintiff presents two different theories of constructive notice: first, that the presence of the liquid was foreseeable because it resulted from a regular occurrence; and second, that the hazard was present in the location for so long that Defendant, in the exercise of ordinary care, should have known of its existence. The court examines these arguments separately.

#### i. Regularity

Plaintiff first argues that Defendant had constructive notice based on the "regularity" with which similar incidents occurred. In particular, Plaintiff points to Defendant's employees' estimates that there were ten slip-and-fall incidents in the store in question per year (Kramlich Dep. Tr. 25:19-26:11) and that they had seen urine on the floor of the store on other occasions (Kokoris Dep. Tr. 10:17-11:3; see also Lavel Dep. Tr. 21:18-22:18).

Constructive notice of a specific hazardous condition may be found where a defendant is shown to have "actual notice of a recurring dangerous condition." Fay v. Bass Hotels & Resorts,

Inc., No. 00-CV-9107 (MBM), 2003 WL 21738967, at *6 (S.D.N.Y. July 28, 2003) (citing Padula v. Big V Supermarkets, Inc., 570 N.Y.S.2d 850, 851 (N.Y. App. Div. 1991)). A defendant's general awareness that dangerous conditions exist on the premises, unaccompanied by awareness of the presence of such hazards in a "distinctly identifiable area[]," is insufficient to provide constructive notice under this standard. Riley v. Battery Place Car Park, 210 F. App'x 76, 77 (2d Cir. 2006) (summary order); cf. Yearwood v. Cushman & Wakefield, Inc., 742 N.Y.S.2d 661, 662 (N.Y. App. Div. 2002) (holding that awareness of recurring water in the lobby was not "sufficient to establish constructive notice of the particular wet condition on the marble floor which caused the plaintiff to slip"). While this does not require plaintiff to "establish the defendant's knowledge of the exact [hazard] on which the plaintiff fell," it does require a showing that "defendant had . . . knowledge of the particular dangerous condition that is 'qualitatively different from a mere 'general awareness' that a dangerous condition may be present." Gonzalez v. Wal-Mart Stores, Inc., 299 F. Supp. 2d 188, 193 (S.D.N.Y. 2004) (citations omitted).

The record here is insufficient to establish the existence of a distinctive recurring condition to merit charging Defendant with constructive notice of the hazard that caused Plaintiff's injury. At most, Plaintiff presents evidence suggesting that customers slipped in the store with some regularity, and that some of the employees may have been aware of a customer that occasionally urinated in the store. Nothing in the record shows that Defendant or its employees were aware that certain areas in the store presented a greater risk of customer slip-

and-falls[14] or experienced a greater volume of liquid accumulation on the floor. Instead, the evidence establishes at most that Defendant was generally aware of a risk that customers in the store in question might fall, or that a certain hazard might arise at irregular, unpredictable times and locations within the store. Defendant cannot be fairly charged with having "actual knowledge of a recurring dangerous condition" based solely on evidence that it was aware of a generalized category of risks that could occur within its store.

ii.     Passage of Time

Plaintiff next argues that evidence in the record suggests the spill had been on the floor for a sufficient length of time to place Defendant on constructive notice of its existence. (Pl. Mem. at 11-16.) In order to give rise to constructive notice on this basis, the hazard in question "must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Gordon v. Am. Museum of Nat. History, 67 N.Y.2d 836, 837 (1986); accord Byone v. Target Corp., 548 F. App'x 709, 710 (2d Cir. 2013) (summary order). "The mere existence of a liquid substance . . . where the accident allegedly took place does not establish constructive notice." Shimonov v. Home Depot U.S.A., Inc., No.11-CV-5136 (KAM), 2014 WL 1311561, at *5 (E.D.N.Y. Mar. 28, 2014) (quoting Hammond-Warner v. United States, 797 F. Supp. 207, 211 (E.D.N.Y. 1992)). Instead, in order to merit a finding of constructive notice, a "plaintiff must present evidence of the length of time the condition existed prior to the alleged fall." Hammond-Warner, 797 F. Supp. at 211; see also Lionel v. Target Corp., 44 F. Supp. 3d 315, 320 (E.D.N.Y. 2014) ("[T]here must be

---

[14] Plaintiff points to one statement in the testimony of one of Defendant's employees indicating that the area in which Plaintiff fell—the "action alley"—is "an area that is most traversed by customers." (Kramlich Dep. Tr. 38:10-20.) Neither that employee nor any other individual suggested the "action alley" was particularly susceptible to spills (or to public urination), however, and this testimony does not provide a reasonable basis from which to infer that Defendant was aware of a recurring hazard in that particular area.

18

evidence in the record establishing 'either how the substance got there or how long it was there before the fall.'" (citation omitted)).

In this case, Plaintiff has presented no evidence that tends to establish the length of time that the liquid was on the floor or exactly how it came to be there. The only identified evidence to which Plaintiff points that could be suggestive of duration is the presence of paper towels in the liquid.[15] As discussed above in Section II.B.3.a, Plaintiff has presented sufficient evidence based on the presence of the paper towels to allow the jury to infer that Defendant's employees in fact observed the liquid. The same argument does not hold up, however, if Plaintiff seeks to draw the broader inference that the presence of paper towels indicates the liquid on the ground for long enough that it should have been discovered by Defendant's employees. Even accepting that the paper towels were placed in the spill before Plaintiff arrived, that fact alone provides no indication as to when they were placed, or how long the hazard had been in that spot prior to Plaintiff's fall. See Lionel, 44 F. Supp. 3d at 323 (finding the presence of a "wet paper towel" at the scene of the plaintiff's fall to be insufficient to support constructive notice). Put differently, to the extent that Plaintiff argues the presence of paper towels in the liquid, divorced from questions of who placed them, is sufficient to indicate Defendant should have been on notice of the hazard, the court finds that inference to be speculative and unreasonable.[16]

---

[15] Plaintiff also points to a written statement from one of Defendant's employees that the floor surface was not "clean." (Ex. 1 to Pl. Mot. (Dkt. 31-1) at ECF p.4 ("CMI Incident Rep.").) She suggests that this gives rise to an inference as to how long the liquid was on the floor prior to her fall, arguing that the fact the liquid was "unclean" suggests that it been on the floor for a longer period of time. (Pl. Mem. at 14). The court does not need to address the merits of this suggested inference, however, as it appears in the first instance to be based on a misreading of the cited report: the report does not indicate that the liquid was dirty, but rather that the floor was dirty because it had liquid on it. (CMI Incident Rep.)

[16] Plaintiff also raises the separate but related argument that Defendant failed to conduct a reasonable inspection of the store and so may be held liable under a negligence theory based on this failure to inspect. (Pl. Mem. at 16-17.) See Tuthill, 270 F. Supp. 2d at 400 ("[T]he issue of actual or constructive notice is irrelevant where defendant had a duty to conduct reasonable inspection of the premises but failed to do so.") In support of this argument, Plaintiff points to testimony that Defendant's employees were unable to say when the area in which Plaintiff fell was inspected on the relevant day. (Pl. Mem. at 16-17.) This argument fails for two reasons. First, to the extent that

19

\* \* \* \*

Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's theory that Defendant was on constructive notice of the hazard that allegedly caused Plaintiff's injury.

### III.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 26) is GRANTED IN PART and DENIED IN PART as follows: Defendant's motion for summary judgment on Plaintiff's theory that Defendant had constructive notice of the dangerous condition is granted. Defendant's motion for summary judgment on the issue of actual notice is denied. Plaintiff's motion for sanctions for spoliation of evidence (Dkt. 30) is DENIED. The parties are directed to contact the chambers of Magistrate Judge Lois Bloom to schedule the filing of a Joint Pretrial Order in accordance with this court's Individual Rules, to be electronically filed no later than April 1, 2018. The parties are further directed to confer and to contact the court's Deputy at 718-613-2545 to set a trial date.

SO ORDERED.

Dated: Brooklyn, New York
January _10_, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

Plaintiff suggests Defendant breached its duty because reasonable inspections would have identified the hazard, the argument fails for the same reason cited above: Plaintiff presents no evidence to suggest how long the hazard was present, and so there is no basis to find that Defendant breached its duty in failing to notice that hazard. See Lionel, 44 F. Supp. 3d at 321-22 ("Plaintiff's evidence is insufficient to establish the reasonable inference that Defendant breached [its duty to inspect for and eliminate potential hazards], since there is no evidence in the record indicating how long the food container lid remained on the floor."). Moreover, testimony by Defendant's employees indicates that they did, in fact, conduct regular inspections of the store for potential hazards. (See, e.g., Matos Dep. Tr. 16:25-17:8.) Plaintiff does not refute this point, but only points to testimony by employees that they are unable to recall when the store was inspected on the day in question. This inability to recall the specifics of the inspection schedule does not, however, suggest that no such inspections occurred, and Plaintiff presents no evidence to suggest that is the case.

20